CHRISTOPHER L. WANGER (CA Bar No. 164751) Admitted pro hac vice
BRANDON WONG (CA Bar No. 327372) Admitted pro hac vice
MANATT, PHELPS & PHILLIPS, LLP
Email: cwanger@manatt.com
Email: bwong@manatt.com
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
Telephone:    (415) 291-7400
Facsimile:    (415) 291-7474

*Attorneys for Defendants*
CREDITSERVE, INC., ERIC WELCH,
 and JAY MCGRAW

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| HEATHER JAMES, on behalf of herself and all others similarly situated,, | |
| Plaintiff, | Case No.: 4:25-cv-00024-SLG |
| v. | |
| ERIC LOCHEN; MINERAL POINT CONSULTING SERVICES; CREDITSERVE, INC.; ERIC WELCH; JAY MCGRAW; SHANE THIN ELK; LORI BAKER; CHARLIE TITUS, JR.; LINDBERG CHARLIE; JONATHAN DAVID, SR.; and JOHN DOES 1 - 40, | **CREDITSERVE DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY ACTION** |
| Defendants. | |

Manatt, Phelps & Phillips, LLP
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
TELEPHONE (415) 291-7400 • FACSIMILE (415) 291-7474
A

# **TABLE OF CONTENTS**

I. ARGUMENT ...................................................................................................................1

    A. The CreditServe Defendants Can Rely on Agency Law. ...................................1

    B. The CreditServe Defendants are Third-Party Beneficiaries. ............................4

    C. Equitable Estoppel Applies. ..............................................................................6

    D. Prospective Waiver Doctrine Does Not Apply. ................................................9

        1. The Agreement Preserves James's RICO Claim. ................................11

        2. The Court Could Enforce Under Tribal Law. .....................................12

    E. James's Delegation Clause Challenge Fails. ...................................................13

    F. If Necessary, the Court Can Sever the Governing Law Clause. ......................17

II. CONCLUSION ............................................................................................................17

Manatt, Phelps & Phillips, LLP
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
TELEPHONE (415) 291-7400 • FACSIMILE (415) 291-7474

CREDITSERVE DEFENDANTS' REPLY ISO MOTION TO      CASE NO. 4:25-CV-00024-SLG
COMPEL ARBITRATION AND STAY ACTION

404466834.3

**CASES**

*14 Penn Plaza LLC v. Pyett*,
556 U.S. 247 (2009) ............................................................................................................ 9

*Al-Nahhas v. Rosebud Lending LZO*,
2023 WL 5509320 (N.D. Ill. Aug. 25, 2023) .................................................................... 3

*Am. Exp. Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013) ...................................................................................................... 9, 10

*Aquino v. Ceva Logistics U.S., Inc.*,
2015 WL 13919076 (C.D. Cal. Mar. 24, 2015) ................................................................ 5

*Arredondo v. Sw. & Pac. Specialty Fin., Inc.*,
2019 WL 4596776 (E.D. Cal. Sept. 23, 2019) ................................................................ 12

*Borelli v. Black Diamond Aggregates, Inc.*,
2017 WL 1063564 (E.D. Cal. Mar. 21, 2017) ................................................................... 1

*Boucher v. All Title Co.*,
127 Cal. App. 4th 262, 272 (2005) .................................................................................... 9

*Brice v. Haynes Invs., LLC*,
13 F.4th 823 (9th Cir. 2021) ................................................................................. 14, 15, 16

*Brice v. Haynes Invs., LLC*,
35 F.4th 1219 (9th Cir. 2022) .......................................................................................... 16

*Brice v. Sequoia Capital Operations, LLC*,
*859 F. App'x 31 (9th Cir. 2021)* ........................................................................ 14, 15, 16

*Bridges v. Raines*,
2025 WL 3565343 (W.D.N.C. Dec. 10, 2025) ................................................................ 11

*Chrysler Capital Corp. v. Century Power Corp.*,
778 F. Supp. 1260 (S.D.N.Y. 1991) ................................................................................... 2

*Dunn v. Glob. Tr. Mgmt., LLC*,
2024 WL 4379966 (11th Cir. Oct. 3, 2024) .............................................................. 12, 14

*Elder v. BMO Harris Bank*,
2014 WL 1429334 (D. Md. Apr. 11, 2014) .................................................................... 1, 4

*Ferguson v. Corinthian Colls., Inc.*,
*733 F. 3d 928, 936 (9th Cir. 2013)* ................................................................................ 11

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995) ........................................................................................................ 17

*FTC v. Payday Fin., LLC*,
935 F. Supp. 2d 926 (D.S.D. 2013) ................................................................................. 13

Manatt, Phelps & Phillips, LLP
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
TELEPHONE (415) 291-7400 • FACSIMILE (415) 291-7474
A

Manatt, Phelps & Phillips, LLP
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
TELEPHONE (415) 291-7400 • FACSIMILE (415) 291-7474

A

*Gibbs v. Haynes Invs., LLC*,
   967 F.3d 332 (4th Cir. 2020) ................................................................................................ 14

*Gilmer v. Interstate/Johnson Lane Corp.*,
   500 U.S. 20 (1991) .............................................................................................................. 10

*Gingras v. Think Fin., Inc.*,
   922 F.3d 112 (2d Cir. 2019) ................................................................................................ 14

*Goldman v. KPMG LLP*,
   173 Cal. App. 4th 209 (2009) ...................................................................................... 7, 8, 9

*Gountoumas v. Giaran, Inc.*,
   2018 WL 6930761 (C.D. Cal. Nov. 21, 2018) .................................................................... 16

*Green Tree Fin. Corp.-Ala. v. Randolph*,
   531 U.S. 79 (2000) ................................................................................................................ 9

*Guzman v. W. Union Fin. Servs., Inc.*,
   2024 WL 5422799 (C.D. Cal. Dec. 20, 2024) ..................................................................... 6

*Haas v. Slate Lending of Wis.*,
   2022 WL 2209604 (W.D. Wis. June 21, 2022) ................................................................... 14

*Harris v. Super. Ct.*,
   188 Cal. App. 3d 475 (1986) ................................................................................................ 4

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   586 U.S. 63 (2019) ........................................................................................................ 10, 16

*Herrera v. Cathay Pac. Airways, Ltd.*,
   104 F. 4th 702 (9th Cir. 2024) .............................................................................................. 9

*Hilton v. Apple, Inc.*,
   2014 WL 12597143 (C.D. Cal. Jan 9, 2014) ........................................................................ 8

*Iowa Mut. Ins. Co. v. LaPlante*,
   480 U.S. 9 (1987) ................................................................................................................ 13

*Johnson & Johnson v. Azam Int'l Trading*,
   2013 WL 4048295 (E.D.N.Y. Aug. 9, 2013) ........................................................................ 2

*Johnson v. Opportunity Fin., LLC*,
   2023 WL 2636712 (E.D. Va. Mar. 24, 2023).................................................................... 11

*Kramer v. Toyota Motor Corp.*,
   705 F.3d 1122 (9th Cir. 2013) .............................................................................................. 7

*Labajo v. First Int'l Bank & Tr.*,
   2014 WL 4090527 (C.D. Cal. July 9, 2014) .................................................................. 1, 3

*M/S Bremen v. Zapata Off-Shore Co.*,
   407 U.S. 1, & 13 ................................................................................................................. 13

CREDITSERVE DEFENDANTS' MOTION TO COMPEL
ARBITRATION AND STAY ACTION

CASE NO. 4:25-CV-00024-SLG

404466834.3

Manatt, Phelps & Phillips, LLP
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
TELEPHONE (415) 291-7400 • FACSIMILE (415) 291-7474
A

*NASD Dispute Resolution, Inc. v. Judicial Council*,
   488 F.3d 1065 (9th Cir. 2007) ................................................................................16

*Norris v. Aon Plc*,
   2021 WL 1238303 (N.D. Cal. Apr. 2, 2021).............................................................16

*Pac. Dawn LLC v. Pritzker*,
   831 F.3d 1166 (9th Cir. 2016) ................................................................................17

*Platt v. Sodexo, S.A.*,
   148 F.4th 709 (9th Cir. 2025) ...................................................................................2

*Preston v. Ferrer*,
   *552 U.S. 346, 259 (2008)* ......................................................................................11

*Rajagopalan v. NoteWorld, LLC*,
   *718 F. 3d 844, 847 (9th Cir. 2013)* ..........................................................................8

*Reddam v. KPMG LLP*,
   2004 WL 3761875 (C.D. Cal. Dec. 14, 2004)...........................................................2

*Rent-A-Ctr. W., Inc. v. Jackson*,
   561 U.S. 63 (2010) .................................................................................................16

*Roman v. Super. Ct.*,
   172 Cal. App. 4th 1462 (2009).................................................................................17

*S.D. Gas & Elec. Co. v. Mitsubishi Heavy Indus.*,
   2014 WL 1245842 (S.D. Cal. Mar. 14, 2014)......................................................3, 12

*Shearson/Am. Exp., Inc. v. McMahon*,
   482 U.S. 220 (1987) ...............................................................................................10

*Smith v. Nerium Int'l*,
   LLC, 2019 WL 7195330 (C.D. Cal. Sept. 10, 2019) ................................................16

*Smith v. W. Sky Fin., LLC*,
   168 F. Supp. 3d 778 (E.D. Pa. 2016).......................................................................14

*Soltero v. Precise Distrib., Inc.*,
   *192 Cal. App. 5th 887, 888-89 (2024)* .....................................................................5

*Soto v. Am. Honda Motor Co.*,
   *946 F. Supp. 2d 949, 955-56 (N.D. Cal 2012)* .........................................................8

*Spinks v. Equity Resid. Briarwood Apartments*,
   171 Cal. App. 4th 1004 (2009)..................................................................................4

*United States v. Crawley*,
   837 F.2d 291 (7th Cir. 1988) ....................................................................................3

*Veneno v. United States*,
   2025 WL 3131791 (Nov. 10, 2025) (Gorsuch, J., dissenting) ..................................13

CREDITSERVE DEFENDANTS' MOTION TO COMPEL      CASE NO. 4:25-CV-00024-SLG
ARBITRATION AND STAY ACTION

404466834.3

*Viking River Cruises, Inc. v. Moriana*,
  596 U.S. 639 (2022) .......................................................................................... 10, 11

*Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*,
  515 U.S. 528 (1991) ........................................................................................... 9, 12

*Williams v. Medley Oppo. Fund II, LP*,
  965 F.3d 229 (3d Cir. 2020) ..................................................................................... 14

*Wood v. W6LS, Inc.*,
  No. 4:24-cv-128-DJH (W.D. Ky. Sept. 30, 2025), ECF No. 21 ....................................... 12

## STATUTES

18 U.S.C. § 1961(6).................................................................................................... 7

18 U.S.C. § 1962(d)................................................................................................... 2

## OTHER AUTHORITIES

*Affiliate*, Black's Law Dictionary (12th ed. 2024) ........................................................ 5

Manatt, Phelps & Phillips, LLP
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
TELEPHONE (415) 291-7400 • FACSIMILE (415) 291-7474

A

v

Manatt, Phelps & Phillips, LLP
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
TELEPHONE (415) 291-7400 • FACSIMILE (415) 291-7474

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     ARGUMENT

#### A.     The CreditServe Defendants Can Rely on Agency Law.

James claims the fact that the CreditServe Defendants ("CSDs") are not signatories to the loan agreement precludes their ability to enforce arbitration. Not so. The CSDs can compel arbitration under California agency principles. James claims otherwise, arguing that California law requires that "'the principal [must] maintain[] control over the agent's actions.'" Opp. at 6 (quoting *Borelli v. Black Diamond Aggregates, Inc.*, 2017 WL 1063564 (E.D. Cal. Mar. 21, 2017)).[1] But this merely restates the common law definition of agency without regard to James's own allegations.

In RICO and civil conspiracy claims, courts apply a "well-established principle that co-conspirators are agents of one another" without regard to control. *See Elder v. BMO Harris Bank*, 2014 WL 1429334, at *1 n.4 (D. Md. Apr. 11, 2014) (finding that "plaintiff has alleged, in fact that defendants conspired with the payday lenders to collect an unlawful debt [under RICO], and that it is a well-established principle that co-conspirators are agents of one another"); *Labajo v. First Int'l Bank & Tr.*, 2014 WL 4090527, at *7 (C.D. Cal. July 9, 2014) (acknowledging that each co-conspirator

---

[1] *Borelli* found agency inapplicable because the plaintiffs did not show that the "[non-signatory] exercised control over [the signatory], or vice versa." *Borelli*, at *12. But James's allegations, taken as true for this motion only, establish that Minto and the CSDs exercised control over one another through the alleged Enterprise. Compl. 27.

1

"perform[s] a crucial function with respect to the loans"); *Reddam v. KPMG LLP*, 2004 WL 3761875, at \*4 (C.D. Cal. Dec. 14, 2004).[2]

Assuming the truth of the allegations for purposes of this Motion only,[3] James alleges that the CSDs are co-conspirators to a conspiracy designed to profit from tribal sovereign immunity, "consisting of each of the named Non-Tribal Defendants, and the unnamed officers, executives, and other employees of the Non-Tribal Defendants and other companies involved in the scheme." *E.g.*, Compl. ¶¶ 130, 162–65 (emphases added).[4] *See also id.* ¶ 144 ("The Non-Tribal Defendants violated 18 U.S.C. § 1962(d) by conspiring to use the Enterprise to collect unlawful debt."); *id.* ¶ 142 (alleging that the "Enterprise" consists of "the Non-Tribal Defendants" (including the CSDs) and "other companies").

James also alleges that the CSDs exert "significant control" over Minto Money ("MM"). Compl. ¶ 14 & 27. In turn, the CSDs are alleged to use the Tribe "cloak themselves in [its] sovereign immunity." *Id.* ¶ 7. Assuming, without conceding, that this comprises an illegal conspiracy, it is only possible because of the "critical function" played by each alleged co-conspirator—that of the CSDs as the sword, and the Tribe as

---

[2] *Cf. Johnson & Johnson v. Azam Int'l Trading*, 2013 WL 4048295, at \*7 (E.D.N.Y. Aug. 9, 2013) (defining "'agent' broadly to include not only a defendant's formal agents, but also, under certain circumstances, a defendant's co-conspirators," even where "[p]laintiffs have not demonstrated that the remaining defendants exercised control" (quoting *Chrysler Capital Corp. v. Century Power Corp.*, 778 F. Supp. 1260, 1266 (S.D.N.Y. 1991))).

[3] The CSDs do not waive, and explicitly reserve, the right to later dispute the truth of these allegations. But on a motion to compel arbitration, such allegations are construed in favor of the non-moving party. *Platt v. Sodexo, S.A.*, 148 F.4th 709, 716 (9th Cir. 2025).

[4] She also brings a civil conspiracy claim against the CSDs. Compl. ¶¶ 162–65.

CREDITSERVE DEFENDANTS' REPLY ISO MOTION TO COMPEL ARBITRATION AND STAY ACTION

CASE NO. 4:25-CV-00024-SLG

404466834.3

Manatt, Phelps & Phillips, LLP
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
TELEPHONE (415) 291-7400 • FACSIMILE (415) 291-7474

the shield. *Labajo*, 2014 WL 4090527, at *7. According to James's conspiracy and RICO allegations, which are judicial admissions, the CSDs and MM are agents of one another, entitling the CSDs to enforce the arbitration provision. *S.D. Gas & Elec. Co. v. Mitsubishi Heavy Indus.*, 2014 WL 1245842, at *6 (S.D. Cal. Mar. 14, 2014).

James cites *Al-Nahhas v. Rosebud Lending LZO*, 2023 WL 5509320, at *8 (N.D. Ill. Aug. 25, 2023), which is inapposite. *Al-Nahhas* was decided under Illinois, not California, law. Second, the plaintiff there did not allege a conspiracy. *See* Compl., *Al-Nahhas*, No. 22-CV-750, (N.D. Ill. Feb. 10, 2022), ECF No. 1. And the *Al-Nahhas* defendants **conceded** that they were **not** the tribal lender's agents, binding themselves to "accept the accompanying concession that they have no legal authority to enforce the arbitration provisions based on agency." *Al-Nahhas*, at *10. Here, by contrast, James levied civil conspiracy allegations—which, taken as true at this juncture—cast the CSDs and MM as co-conspirator agents of one another.[5]

James engages in fearmongering about shadowy "dominant actors behind an illegal scheme [] pull[ing] all the strings, hid[ing] their identity in the arbitration agreement, and then invok[ing] that agreement to shield themselves from litigation." Opp. at 6–7. Rather than "flip[] agency theory on its head," James's extensive allegations of control demonstrate the simple and "well-established" agency relationship

---

[5] *Al-Nahhas*'s treatment of agency and other non-signatory enforcement likely are *dicta*. That court resolved the defendants' motion to compel arbitration on waiver grounds, *see* 2023 WL 5509320, at *3–7, and then proceeded to resolve legal arguments that were unnecessary to that holding. *United States v. Crawley*, 837 F.2d 291, 292 (7th Cir. 1988) (dictum is "a statement not addressed to the question before the court or necessary for its decision.").

CREDITSERVE DEFENDANTS' REPLY ISO MOTION TO COMPEL         CASE NO. 4:25-CV-00024-SLG
ARBITRATION AND STAY ACTION

Manatt, Phelps & Phillips, LLP
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
TELEPHONE (415) 291-7400 • FACSIMILE (415) 291-7474

between two alleged co-conspirators. *Elder*, 2014 WL 1429334, at \*1 n.4. Thus, the CSDs may enforce the Arbitration Agreement via agency principles.

James' argument that the CSDs do not qualify as agents of MM because they control MM and are not *controlled by* MM also fails because it ignores other terms of the arbitration agreement. The agreement expressly defines third parties who can enforce the arbitration agreement as including "managers" of MM. *See* Charlie Decl., Ex. 1 ("Loan Agmt."), at 5, ECF No. 43-1. James expressly alleges that the CSDs are the managers of MM. See Compl. ¶¶ 59–63 & 13 (stating "Minto Money is Managed by Non-Tribal Outsiders").

## B. The CreditServe Defendants are Third-Party Beneficiaries.

The CSDs can enforce the Arbitration Agreement as third-party beneficiaries. *Harris v. Super. Ct.*, 188 Cal. App. 3d 475, 478 (1986). An agreement need not explicitly name an intended third-party beneficiary; the third party must belong to a "class of persons for whose benefit [the agreement] was made." *Spinks v. Equity Resid. Briarwood Apartments*, 171 Cal. App. 4th 1004, 1023 (2009)).

James incorrectly claims that the CSDs are not "related third parties" contemplated in the Arbitration Agreement. Opp. 7–8. First, under James's allegations, the CSDs must be considered "agents" of MM that are thus expressly listed in the Arbitration Agreement. *See supra*. Second, under her allegations, the CSDs are also "affiliated entities" entitled to enforcement. James asserts otherwise because the CSDs are not "corporate affiliates" or "subsidiaries" of MM. Opp. at 7–8 (emphasis removed).

CREDITSERVE DEFENDANTS' REPLY ISO MOTION TO COMPEL
ARBITRATION AND STAY ACTION

CASE NO. 4:25-CV-00024-SLG

404466834.3

But James's own dictionary definition acknowledges that companies can be affiliated on the basis of **control**, not merely legal ownership. *See Affiliate*, Black's Law Dictionary (12th ed. 2024) ("A corporation that is related to another … by shareholdings **or other means of control** ....") (emphasis added). This is consistent with the Privacy Policy attached to the Agreement, which similarly defines "Affiliates" as "Companies related by common ownership *or control*." *See* Loan Agmt. at 10 (italics added).

James's factual allegations support finding that the CSDs are "affiliated entities" too. James alleges that the CSDs, along with MM, are part of a RICO "Enterprise" that is "associated for the common purpose of profiting off of the collection on unlawful debt by offering and collecting on loans ... through online lenders affiliated with the Non-Tribal Defendants." Compl. ¶ 142. She also alleges that the CSDs "control [MM]." *Id.* ¶ 14.

James' cases are inapposite. In *Aquino*, a **customer** of the signatory to an arbitration agreement tried to enforce it as a "related or affiliated entity" of the signatory. *Aquino v. Ceva Logistics U.S., Inc.*, 2015 WL 13919076, at *3 (C.D. Cal. Mar. 24, 2015). No reasonable person believes that a counterparty to an arms-length commercial transaction makes it a "related or affiliated entity." *Soltero v. Precise Distrib., Inc.* involved the same infirmity: A non-signatory **client** of the signatory employer claimed that it was a "related entity" of the signatory. 192 Cal. App. 5th 887, 888–89 (2024). James's Arbitration Agreement clears that hurdle by explicitly identifying "related third parties" as among the class of persons entitled to enforce the agreement to arbitrate. *See*

Manatt, Phelps & Phillips, LLP
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
TELEPHONE (415) 291-7400 • FACSIMILE (415) 291-7474
A

CREDITSERVE DEFENDANTS' REPLY ISO MOTION TO COMPEL       CASE NO. 4:25-CV-00024-SLG
ARBITRATION AND STAY ACTION

404466834.3

Charlie Decl., Ex. 1 ("Loan Agmt."), at 5, ECF No. 43-1. And in *Guzman*, the non-signatory defendant was not a third-party beneficiary because it "did not benefit as it did not receive performance or revenue from the agreement [between Western Union and plaintiff] and the agreement does not mention Forcepoint or a third party …, so there can be no motivating purpose to benefit them ...." *Guzman v. W. Union Fin. Servs., Inc.*, 2024 WL 5422799, at *3 (C.D. Cal. Dec. 20, 2024).[6] By contrast, James alleges the CSDs benefitted under James's loan agreement and expressly contends that "the vast majority of the [loan] profits flow to non-tribal outsiders," like the CSDs, who "receive millions of dollars in exchange for their 'services'..." Compl. ¶ 110. Unlike *Guzman*, the Arbitration Agreement clearly identifies "related third parties" like the CSDs as covered, demonstrating a "motivating purpose to benefit them." *Guzman*, at *3.

### C. Equitable Estoppel Applies.

The CSDs can also enforce the Arbitration Agreement under equitable estoppel principles, which allows a nonsignatory to enforce an arbitration agreement in two circumstances:

> (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are "intimately founded in and intertwined with" the underlying contract, and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and "the allegations of interdependent misconduct [are] founded in or intimately connected with the obligations of the underlying agreement."

---

[6] *Guzman*'s California law third-party beneficiary holding might be dictum because the non-signatory there claimed third-party beneficiary status under Western Union's arbitration agreement, which was governed by **Colorado law**. *See Guzman*, 2024 WL 5422799, at *2–3.

CREDITSERVE DEFENDANTS' REPLY ISO MOTION TO COMPEL       CASE NO. 4:25-CV-00024-SLG
ARBITRATION AND STAY ACTION

404466834.3

Manatt, Phelps & Phillips, LLP
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
TELEPHONE (415) 291-7400 • FACSIMILE (415) 291-7474

*Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128–29 (9th Cir. 2013) (citations omitted) (quoting *Goldman v. KPMG LLP*, 173 Cal. App. 4th 209, 219, 221 (2009)). Both circumstances readily apply here.

James falsely claims that she "does not rely on any terms of the Loan Agreement in bringing his claims against Defendants …." (Opp. at 9). James alleges that her "loan from [MM] was for $600 and had an interest rate of 755.29%." Compl. ¶ 115. James's RICO claims against the CSDs depend entirely on the Loan Agreement's interest rate and James's obligation to repay her loan. Compl. ¶¶ 133–36, 144. Without that, James could not state a claim for collection of an "unlawful debt." 18 U.S.C. § 1961(6). The same is true for her California usury, UCL, unjust enrichment, and civil conspiracy claims—all of which explicitly reference the purportedly unlawful interest rate. Compl. ¶¶ 149, 152(b), 155, 160, 164. Indeed, after complaining about her loan's interest rate and alleging California laws concerning interest rate limits, James alleges: "Defendants unlawfully lent money to Plaintiff …, ***and thus violated the UCL***." Compl. ¶ 119 (emphasis added). All of her claims against the CSDs are thus "intimately founded in and intertwined with" her contractual obligation to repay her loan at the agreed-upon rate. *Goldman*, 173 Cal. App. 4th at 221.

Equitable estoppel also applies because James alleges "substantially interdependent and concerted misconduct by the nonsignatory and another signatory and 'the allegations of interdependent misconduct [are] founded in or intimately connected with the obligations of the underlying agreement.'" *Kramer*, 705 F.3d at 1129 (quoting

CREDITSERVE DEFENDANTS' REPLY ISO MOTION TO COMPEL          CASE NO. 4:25-CV-00024-SLG
ARBITRATION AND STAY ACTION

404466834.3

Manatt, Phelps & Phillips, LLP
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
TELEPHONE (415) 291-7400 • FACSIMILE (415) 291-7474

*Goldman*, 173 Cal. App. 4th at 219). As noted above (*supra*, Section I.A.2), James (a signatory) alleges that MM (another signatory) and the CSDs (nonsignatories), are part of a RICO "Enterprise" that is "associated for the common purpose of profiting off of the collection on unlawful debt by offering and collecting on loans ... through online lenders affiliated with the Non-Tribal Defendants." Compl. ¶ 142. James alleges that her own loan was made pursuant to this purported civil conspiracy. *Id*. ¶¶ 163–64. James's remaining claims logically flow from and are "intimately connected with the obligations of the underlying agreement"—the CSDs' alleged offering to James a loan at unlawful interest rates, and James's corresponding obligation to repay it.

James's cases are not persuasive. *Rajagopalan v. NoteWorld, LLC* is irrelevant because it concerned applying Washington law, not California law. 718 F.3d 844, 847 (9th Cir. 2013). *Hilton v. Apple, Inc.* is legally dubious because it relied solely on *Rajagopalan* to hold that a *California* consumer's RICO claim against a phone manufacturer in *California* court was not founded in the consumer's *wireless services* contract with her phone carrier. 2014 WL 12597143 (C.D. Cal. Jan. 9, 2014). *Soto v. Am. Honda Motor Co.* involved product liability claims arising from the defendant's warranties and marketing materials, not the sale contract with the consumer, so the claims were not intimately founded in car dealer's sales contract. 946 F. Supp. 2d 949, 955–56 (N.D. Cal. 2012).[7] Here, James's UCL claim arises out of the CSDs' alleged

---

[7] These cases are further factually distinguishable because they each involve separate entities serving different functions from the consumer's perspective. Although CreditServe provides services for MM (and, as such, they are also distinct from each other), James essentially alleges that the CreditServe Defendants and MM are indistinguishable. Compl. ¶¶ 14, 63, 104.

CREDITSERVE DEFENDANTS' REPLY ISO MOTION TO COMPEL      CASE NO. 4:25-CV-00024-SLG
ARBITRATION AND STAY ACTION

404466834.3

Manatt, Phelps & Phillips, LLP
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
TELEPHONE (415) 291-7400 • FACSIMILE (415) 291-7474

evasion of California interest rate limitations by "[c]harging interest rates" exceeding state law and "demanding or collecting payment" of unlawful interest. Compl. ¶ 152. The challenged lending and collection actions here must be "intimately connected with the [Loan Agreement's] obligations." *Goldman*, 173 Cal. App. 4th at 219.

James fails to distinguish the CSDs' cases. As in *Herrera v. Cathay Pac. Airways, Ltd.*, James's claims against the CSDs necessarily are intertwined with the Loan Agreement's obligations. 104 F.4th 702 (9th Cir. 2024). James's attempts to distinguish *Boucher v. All. Title Co.* because her claims supposedly do not rely on the Loan Agreement (Opp. at 10), is incorrect for the reasons already mentioned.[8] Accordingly, James is equitably estopped from shirking arbitration.

### D.  Prospective Waiver Doctrine Does Not Apply.

Prospective waiver is a "judge-made exception to the FAA," which "originated as dictum in *Mitsubishi Motors* [*v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985)]…." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 235 (2013). Post-*Mitsubishi* cases suggest the doctrine exists, but none has declined to enforce an arbitration agreement on that ground.[9] Because the U.S. Supreme Court "may not

---

[8] To the extent James argues that equitable estoppel is only available for contract-related actions (Opp. at 10), that's incorrect. *Boucher All Title Co.*, 127 Cal. App. 4th 262, 272 (2005) (claims that are cast in tort rather than contract do not avoid arbitration); *Murphy*, 724 F.3d at 1231 n.7 (although many equitable estoppel actions sound in contract, court would "not foreclose the possibility that a consumer class action" would satisfy equitable estoppel).

[9] *Italian Colors*, 570 U.S. at 235–36 & n.2; *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 265 (2009); *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90–92 (2000); *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 540–41 (1991); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991); *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 240–42 (1987).

CREDITSERVE DEFENDANTS' REPLY ISO MOTION TO COMPEL          CASE NO. 4:25-CV-00024-SLG
ARBITRATION AND STAY ACTION

404466834.3

Manatt, Phelps & Phillips, LLP
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
TELEPHONE (415) 291-7400 • FACSIMILE (415) 291-7474

engraft … exceptions onto the statutory text" of the FAA, the judge-made prospective waiver doctrine has no basis in the FAA. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 70 (2019). At most, prospective waiver "harmonize[s] competing federal policies" so that the FAA does not displace other federal laws in arbitration. *Italian Colors*, 570 U.S. at 235; *id.* at 252 (Kagan, J., dissenting) (prospective waiver "comes into play only when the FAA is alleged to conflict with another federal law….").

James seeks to extend prospective waiver to state law claims through an expansive but erroneous reading of dictum in *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639 (2022). Opp. at 15–16. *Viking River*—a decision **<u>enforcing</u>** arbitration—did not extend prospective waiver to state law or even concern the doctrine. James cites a *Viking River* footnote where the Court wrote that the "principle that the FAA does not mandate enforcement of provisions waiving substantive rights is [not] limited to federal statutes[.]" Opp. 15 (quoting 596 U.S. at 653 n.5). But the Court there was not discussing prospective waiver doctrine; it was discussing whether state statutes that conflict with the FAA are enforceable (and concluded that they are not). 596 U.S. at 653 n.5. Indeed, *Viking River*'s ultimate holding—that the FAA preempted a state law forbidding division of certain labor actions into individual and non-individual claims—actually reinforces that the FAA is not intended to preserve state law rights. *Id*. at 662. *Viking River* is not even persuasive dictum for that proposition.[10] Thus, contra James (Opp. 16),

---

[10] *Preston v. Ferrer*, cited in *Viking River* n.5, is also inapplicable because the Court did not reach the issue of state law prospective waiver there either. 552 U.S. 346, 359 (2008).

10

CREDITSERVE DEFENDANTS' REPLY ISO MOTION TO COMPEL ARBITRATION AND STAY ACTION

CASE NO. 4:25-CV-00024-SLG

404466834.3

Manatt, Phelps & Phillips, LLP
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
TELEPHONE (415) 291-7400 • FACSIMILE (415) 291-7474
A

*Ferguson v. Corinthian Colls., Inc.*—holding that prospective waiver "does not extend to state statutes" (*see* 733 F.3d 928, 936 (9th Cir. 2013))—remains binding precedent.

### 1.    The Agreement Preserves James's RICO Claim.

Because prospective waiver does not concern state law claims, James's remaining argument is that the Arbitration Agreement "implicitly" waives her federal RICO claim because she must reference state law to establish an "unlawful debt." Opp. 14. This argument fails. *Bridges*, 2025 WL 3565343, at *5 ("Plaintiffs argue that they will be precluded from relying on their respective state usury laws to establish a RICO violation and thus will not prevail, [but] this is of no moment. '[A] plaintiff's chance of success plays no role in the analysis deciding whether arbitration must be had . . . It is enough that the plaintiff is not barred from bringing her claim, even if it is bound for defeat.'" (quoting *Johnson v. Opportunity Fin., LLC*, 2023 WL 2636712, at *5 (E.D. Va. Mar. 24, 2023)). The Delegation Clause preserves access to federal law, and the Arbitration Agreement provides that federal law governs the contractual relationship.[11]

This Court is not the proper forum to decide what is essentially James's choice of law objection anyway. James agreed to delegate all disputes, including "the validity and scope of this [Arbitration] Provision and any claim or attempt to set [it] aside" to the arbitrator in the first instance. Loan Agmt. 5. The Loan Agreement expressly incorporates applicable federal law and the FAA, allowing James to raise her choice of

---

[11] *See Bridges v. Raines*, 2025 WL 3565343, at *5 (W.D.N.C. Dec. 10, 2025) (compelling arbitration because plaintiffs could arbitrate RICO claims where agreements incorporated "tribal *and* federal law," disregarding concerns about access to state usury law).

CREDITSERVE DEFENDANTS' REPLY ISO MOTION TO COMPEL     CASE NO. 4:25-CV-00024-SLG
ARBITRATION AND STAY ACTION

404466834.3

Manatt, Phelps & Phillips, LLP
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
TELEPHONE (415) 291-7400 • FACSIMILE (415) 291-7474

law objections with the arbitrator. *Dunn v. Glob. Tr. Mgmt., LLC*, 2024 WL 4379966, at *12–14 (11th Cir. Oct. 3, 2024); Mem. & Order, *Wood v. W6LS, Inc.*, No. 4:24-cv-128-DJH (W.D. Ky. Sept. 30, 2025), ECF No. 21, at 8 (because borrower's loan agreements "allow for the application of federal law, including the FAA, at the arbitrability stage," they "allow him to raise choice-of-law objections with the arbitrator"). "What is dispositive at this stage of the proceedings is that the parties have agreed to delegate all questions pertaining to the enforceability of their arbitration agreements, including the choice-of-law provisions, to an arbitrator." *Dunn*, at *14; *Mitsubishi*, 473 U.S. at 626. The arbitrator—not the Court—must resolve James's choice of law dispute. *Vimar Seguros* 515 U.S. at 540–41 (choice-of-law "must be decided in the first instance by the arbitrator").

James argues that the CSDs did not meet their burden of establishing a valid arbitration agreement because they have not shown that Tribal law will ensure her recourse to federal law. Opp. 17 (citing *Arredondo v. Sw. & Pac. Specialty Fin., Inc.*, 2019 WL 4596776, at *3 (E.D. Cal. Sept. 23, 2019)). But the "burden of proving any defense," like prospective waiver, on "the party ***opposing arbitration*** …." *Arredondo*, at *3. The Loan Agreement affirms access to federal law, including the FAA. Loan Agmt. at 4–6. That's sufficient.

### 2. The Court Could Enforce Under Tribal Law.

The Arbitration Agreement is valid and enforceable to the same extent that choice-of-law clauses selecting the laws of foreign sovereigns to the exclusion of state

CREDITSERVE DEFENDANTS' REPLY ISO MOTION TO COMPEL     CASE NO. 4:25-CV-00024-SLG
ARBITRATION AND STAY ACTION

404466834.3

Manatt, Phelps & Phillips, LLP
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
TELEPHONE (415) 291-7400 • FACSIMILE (415) 291-7474

and federal law are enforceable. But James contends that parties' choice of law must comport with the FAA. Opp. 18. True, but also irrelevant; the Arbitration Agreement repeatedly states that it is governed by, and that the arbitrator must apply, the FAA. Loan Agmt. at 4–6. Likewise, James does not and cannot dispute that binding case law allows foreign law to apply to the parties' dispute, even if the outcome would be far less favorable than U.S. law. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 3–4, 7–8, 8 n.8, & 13 n.15 (1972). Ultimately, tribes like Minto are sovereign entities with their own legal systems and law. *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 14–15 (1987). They are perfectly capable of governing their own affairs and fashioning law to address disputes. *See Veneno v. United States*, 2025 WL 3131791, at *1 (Nov. 10, 2025) (Gorsuch, J., dissenting) ("As 'sovereign and independent states,' Native American Tribes have governed their affairs 'from time immemorial.'" (quoting *Worcester v. Georgia*, 6 Pet. 515, 559–61 (1832))). The Court should thus compel arbitration here under Tribal law, as it would if another country's law was specified. *FTC v. Payday Fin., LLC*, 935 F. Supp. 2d 926, 942 (D.S.D. 2013).

### E.   James's Delegation Clause Challenge Fails.

The above issues are academic because the clear delegation clause delegates all disputes over the scope or validity of the Arbitration Agreement to the arbitrator. James purports to challenge the delegation clause, insisting that the Court must resolve arbitrability. Opp. 19–20. Not so. First, the four out-of-circuit cases James cites where courts refused to submit arbitrability disputes to arbitrator do not present "similar

CREDITSERVE DEFENDANTS' REPLY ISO MOTION TO COMPEL ARBITRATION AND STAY ACTION

CASE NO. 4:25-CV-00024-SLG

404466834.3

Manatt, Phelps & Phillips, LLP
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
TELEPHONE (415) 291-7400 • FACSIMILE (415) 291-7474

circumstances" to this case. *Id*. In those cases, the arbitration provisions required applying tribal law either to the exclusion of all other law or allowed tribal law to preempt federal law.[12] James's Arbitration Agreement, by contrast, explicitly requires applying tribal law **and** federal law. Loan Agmt. at 4–5.

James's delegation clause does not and cannot result in a prospective waiver. The delegation clause explicitly incorporates the FAA and states any "dispute" regarding the "validity and scope of this [Arbitration] Provision and any claim or attempt to set aside this Arbitration Provision" will be resolved pursuant to "tribal law, federal law and the Federal Arbitration Act (9 U.S.C. §§ 1-16)." Loan Agmt. at 4–5. James can advance her prospective waiver argument in arbitration, and the arbitrator will have federal law to evaluate that argument. *See Dunn*, 2024 WL 4379966, at \*12 n.7; *Haas v. Slate Lending of Wis.*, 2022 WL 2209604, at \*3 (W.D. Wis. June 21, 2022) (finding that "prospective waiver" arguments "must be presented to the arbitrator").

The Ninth Circuit reached the same conclusion in *Brice v. Haynes Invs., LLC*, 13 F.4th 823 (9th Cir. 2021), a case with tribal lending agreements having characteristics like James's. Like James's Agreement, the *Brice* agreement: (1) encompassed claims under both state and federal law, including "any issue concerning the validity, enforceability, or scope" of the agreement; and (2) required the arbitrator "to apply Tribal law and the terms of [the] Agreement, including this Agreement to Arbitrate." *Id*.

---

[12] *Williams v. Medley Oppo. Fund II, LP*, 965 F.3d 229, 234, 238 (3d Cir. 2020); *Gibbs v. Haynes Invs., LLC*, 967 F.3d 332, 344 (4th Cir. 2020); *Gingras v. Think Fin., Inc.*, 922 F.3d 112, 118 (2d Cir. 2019); *Smith v. W. Sky Fin., LLC*, 168 F. Supp. 3d 778, 784–45 (E.D. Pa. 2016).

CREDITSERVE DEFENDANTS' REPLY ISO MOTION TO COMPEL      CASE NO. 4:25-CV-00024-SLG
ARBITRATION AND STAY ACTION

404466834.3

Manatt, Phelps & Phillips, LLP
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
TELEPHONE (415) 291-7400 • FACSIMILE (415) 291-7474

at 829. "In determining whether the *delegation provision* is unenforceable," wrote the *Brice* court, "we must decide whether **this particular provision** precludes Borrowers from presenting and having the arbitrator decide whether the arbitration agreement is unenforceable as a prospective waiver under the federal law. That is, does the delegation provision prohibit the arbitrator from considering disputes 'concerning the ... enforceability' of the arbitration agreement that are based on federal law?" *Id*. at 830 (bolding and underlining added). The *Brice* delegation clause did not eliminate the borrowers' "right to *pursue* their prospective-waiver challenge" because the arbitrator could consider enforceability disputes arising under any source of law. *Id*. The agreements' choice of law provisions "dictating that tribal law governs the parties' relationship" did not affect the delegation clause. *Id*. at 830–31. Applying tribal law might mean the arbitrator could not entertain a prospective waiver challenge if *tribal* law did not recognize the doctrine, but that did not prevent the borrowers from pursuing that challenge in arbitration, "which is the key in determining whether *the delegation provision* is itself a prospective waiver." *Id*. at 831. The same result obtains here, because the Loan Agreement explicitly requires applying tribal law, federal law, and the FAA, Loan Agmt. at 4–5, 6, preserving her prospective waiver argument for arbitration.

Further, James mounts only a *pro forma* challenge that restates her unmeritorious attack on the validity of the Arbitration Agreement's Governing Law clause *as a whole* (Opp. 19), which is exactly the sort of conflation that *Brice* held contravened Supreme Court authority. *Brice*, 13 F.4th at 836; *Henry Schein*, 586 U.S. at 71; *cf. Rent-A-Ctr.*

Manatt, Phelps & Phillips, LLP
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
TELEPHONE (415) 291-7400 • FACSIMILE (415) 291-7474

*W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010).[13] And Ninth Circuit courts hold that a choice of law provision outside of a delegation clause does not support invalidating a delegation clause. *E.g.*, *Norris v. Aon Plc*, 2021 WL 1238303, at \*7 (N.D. Cal. Apr. 2, 2021) ("[T]he delegation clause is an independent agreement to have an arbitrator decide gateway arbitrability issues, separate from the … choice-of-law provisions.").

Assuming *arguendo* that James has not merely parroted her choice of law grievances as her delegation clause challenge, it still fails. James fears a scenario where the arbitrator could not the formation of the Arbitration Agreement under state law because he or she could not consult state law. Opp. 19. But James does not challenge formation of ***her*** Arbitration Agreement under any state law. Even if she had actually challenged contract formation, however, the arbitrator would not need state law—the Loan Agreement was formed under and is governed by Federal law and tribal law. Loan Agmt. at 4–5. If she wishes to raise contract formation or enforceability at arbitration, the delegation clause, lacking a choice of law provision, is no impediment. *Gountoumas v. Giaran, Inc.*, 2018 WL 6930761, at \*9 (C.D. Cal. Nov. 21, 2018); *Smith v. Nerium Int'l*, LLC, 2019 WL 7195330, at \*6 (C.D. Cal. Sept. 10, 2019). James's arbitration

Manatt, Phelps & Phillips, LLP
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
TELEPHONE (415) 291-7400 • FACSIMILE (415) 291-7474

---

[13] Although *Brice* was vacated (*see Brice v. Haynes Invs., LLC*, 35 F.4th 1219 (9th Cir. 2022) (mem.)), that has no effect on *Brice*'s logic in view of the Supreme Court precedent cited. *NASD Dispute Resolution, Inc. v. Judicial Council*, 488 F.3d 1065, 1069 (9th Cir. 2007). And *Brice v. Sequoia Capital Operations, LLC*, "a companion case involving different defendants but … materially similar loan agreements, and the same underlying dispute over the enforceability of the arbitration agreements contained in Borrowers' loan agreements," reached the same result for the same reasons and was **not** vacated. 859 F. App'x 31 (9th Cir. 2021) (mem.).

16

agreement clearly states that the arbitrator decides arbitrability, and that must be honored. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943–45 (1995).

### F. If Necessary, the Court Can Sever the Governing Law Clause.

If prospective waiver applies (it does not), severing the allegedly offending provisions and compelling arbitration is appropriate. Under California law (which the CreditServe Defendants do not concede applies), "the strong legislative and judicial preference is to sever the offending term and enforce the balance of the agreement." *Roman v. Super. Ct.*, 172 Cal. App. 4th 1462, 1477 (2009). James hazards that the Governing Law clause is central to a non-existent conspiracy to thwart consumer protection laws. Opp. 20–21. Really, the central purpose of James's Loan Agreement was MM's loan of funds and James's repayment. Arbitrating disputes, although important, was not the Loan Agreement's "central purpose." The decisions James cites to oppose severance (Opp. 21 n.9) did so because the agreements' choice of law clauses required applying tribal law ***to the exclusion of federal law***. But James's Agreement expressly provides that federal law applies. Severance is therefore appropriate (if necessary).[14]

## II. CONCLUSION

For the foregoing reasons, the Court should grant the Motion.

---

[14] Finally, James declined to oppose arguments that she must arbitrate individually, and that this action must be stayed. Opp. 20 n.5. Binding Supreme Court authority compels both outcomes. But by not responding, she has waived any arguments to the contrary. *See Pac. Dawn LLC v. Pritzker*, 831 F.3d 1166, 1178 n.7 (9th Cir. 2016).

CREDITSERVE DEFENDANTS' REPLY ISO MOTION TO COMPEL ARBITRATION AND STAY ACTION

CASE NO. 4:25-CV-00024-SLG

404466834.3

Manatt, Phelps & Phillips, LLP
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
TELEPHONE (415) 291-7400 • FACSIMILE (415) 291-7474

Dated: January 16, 2026

Respectfully submitted,

MANATT, PHELPS & PHILLIPS, LLP

By: /s/ Christopher L. Wanger

Christopher L. Wanger
Brandon Wong
*Attorneys for Defendants*
ERIC WELCH, JAY MCGRAW, and
CREDITSERVE, INC.

CREDITSERVE DEFENDANTS' REPLY ISO MOTION TO COMPEL
ARBITRATION AND STAY ACTION

CASE NO. 4:25-CV-00024-SLG

404466834.3

Manatt, Phelps & Phillips, LLP
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
TELEPHONE (415) 291-7400 • FACSIMILE (415) 291-7474

# CERTIFICATE OF WORD COUNT

Pursuant to L. Civ. R. 7.4(a)(2) and (3) and the Order of this Court dated January 9, 2026, I certify that this Motion does not exceed 4,845 words, excluding all material listed in L. Civ. R. 7.4(a)(4).

/s/ Christopher L. Wanger
Christopher L. Wanger

CREDITSERVE DEFENDANTS' REPLY ISO MOTION TO COMPEL ARBITRATION AND STAY ACTION

CASE NO. 4:25-CV-00024-SLG

404466834.3

Manatt, Phelps & Phillips, LLP
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
TELEPHONE (415) 291-7400 • FACSIMILE (415) 291-7474
A

## **CERTIFICATE OF SERVICE**

I hereby certify that, on January 16, 2026, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's electronic docket.

/s/ Christopher L. Wanger
Christopher L. Wanger

CREDITSERVE DEFENDANTS' REPLY ISO MOTION TO COMPEL ARBITRATION AND STAY ACTION

CASE NO. 4:25-CV-00024-SLG

404466834.3

Manatt, Phelps & Phillips, LLP
One Embarcadero Center, 30th Floor
San Francisco, CA 94111
TELEPHONE (415) 291-7400 • FACSIMILE (415) 291-7474
A