# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

HEATHER JAMES, *on behalf of herself and all others similarly situated*,

          Plaintiff,

    v.

ERIC LOCHEN, *et al.*,

          Defendants.

Case No. 4:25-cv-00024-SLG

## ORDER ON PENDING MOTIONS

Before the Court are the following five pending motions:

1. At Docket 43 is Defendants Lori Baker, Charles Titus, Jr., Lindberg Charlie, Jonathan David, Sr. (collectively, "BEDCO Defendants"), and Shane Thin Elk (collectively, "Tribal Defendants")'s Motion to Dismiss. Plaintiff Heather James responded in opposition at Docket 52, to which Tribal Defendants replied at Docket 68;

2. At Docket 44 is Tribal Defendants' Motion to Compel Arbitration. Plaintiff responded in opposition at Docket 53, to which Tribal Defendants replied at Docket 69;

3. At Docket 45 is Tribal Defendants' Motion to Dismiss or Strike Class Allegations. Plaintiff responded in opposition at Docket 54, to which Tribal Defendants replied at Docket 70;

4. At Docket 46 is Eric Welch, Jay McGraw, and CreditServe, Inc. (collectively, "CreditServe Defendants")'s Motion to Compel Arbitration and Stay Action. Plaintiff responded in opposition at Docket 55, to which CreditServe Defendants replied at Docket 72; and

5. At Docket 47 is CreditServe Defendants' Motion to Dismiss or Strike Class Allegations. Plaintiff responded in opposition at Docket 56, to which CreditServe Defendants replied at Docket 73.

Oral argument on the pending motions was held on February 9, 2026.[1] After oral argument, Tribal Defendants, CreditServe Defendants, and Plaintiff each filed Notices of Supplemental Authority at Dockets 75, 83, and 85, respectively.

## BACKGROUND

This case concerns the lending practices of Minto Money, an online lending enterprise owned by the Native Village of Minto.[2] Plaintiff obtained a $600 loan from Minto Money with an annual interest rate of 755.29% and a total repayment amount of $5,524.55.[3] Plaintiff now seeks to pursue a putative class action against the board members of the Tribe's economic development arm, which wholly owns Minto Money, as well as the non-tribal individuals and entities allegedly involved in

---

[1] Docket 80.

[2] Docket 1 at 3-4.

[3] Docket 1 at 28.

managing, financing, and servicing Minto Money's lending operations.[4]  According to Plaintiff, Defendants relied on the Tribe's sovereign status and choice-of-law provisions to make and collect loans carrying interest rates that would otherwise violate state usury laws.[5]  On behalf of herself and two proposed classes, Plaintiff seeks damages and declaratory relief arising from Minto Money's lending practices.[6]  This action is one of numerous cases brought in federal courts challenging high-interest loans issued through tribal-affiliated lending enterprises.[7]

The Native Village of Minto is a federally recognized tribe located in Minto, Alaska.[8]  In 2018, the Minto Native Village Council (the "Council") established Benhti Economic Development Corporation ("BEDCO") with the stated purpose of "'generat[ing] revenue and promot[ing] economic development and self-sufficiency to significantly benefit the community of the Native Village of Minto.'"[9] Shortly thereafter, BEDCO's Board of Directors ("BEDCO Board") chartered Minto Financial d/b/a Minto Money, "a wholly owned subsidiary of [BEDCO], a sovereign

---

[4] Docket 1 at 3-4, 11, 32-39.

[5] Docket 1 at 3-8.

[6] Docket 1 at 32-41.

[7] *See Al-Nahhas v. 777 Partners LLC*, 129 F.4th 418 (7th Cir. 2025); *Hengle v. Treppa*, 19 F.4th 324 (4th Cir. 2021); *Williams v. Big Picture Loans, LLC*, 929 F.3d 170 (4th Cir. 2019); *Brice v. Haynes Invs., LLC*, 13 F.4th 823 (9th Cir. 2021).

[8] Docket 1 at 4.

[9] Docket 1 at 11 (quoting *About Us*, BEDCO, https://www.bedco.us/about-us (last visited Aug. 4, 2026)); *see* Docket 1-3 at 3-7.

Case No. 4:25-cv-00024-SLG, *James v. Lochen, et al.*
Order on Pending Motions
Page 3 of 26
Case 4:25-cv-00024-SLG    Document 88    Filed 08/07/26    Page 3 of 26

economic arm, enterprise and instrumentality of, and created under the laws of and for the benefit of, the Native Village of Minto."[10]

Defendant Shane Thin Elk, who is alleged to be a member of a different Native American tribe, is the sole commissioner of the Minto Financial Services Licensing & Regulatory Commission (the "Commission").[11] In 2019, the Commission issued a tribal lending license to Minto Money "pursuant to and in accordance with the Tribal Credit Code of the Minto Tribe."[12]

On December 3, 2022, BEDCO executed an Executive Management Consultant Engagement and Services Agreement (the "MPC Agreement") with Defendant Mineral Point Consulting LLC ("MPC") whose sole member is Defendant Eric Lochen (collectively, "Lochen Defendants").[13] The MPC Agreement "explicitly authorizes and approves [MPC] to undertake all management decisions on behalf of [BEDCO] and [its] subsidiaries," including "[r]eview[ing] and consult[ing] on management of all operations . . . with particular regard to, though not limited to, managing its consumer lending operations."[14] The MPC Agreement also requires BEDCO to maintain an exclusive relationship with

---

[10] Docket 1 at 11 (quoting *Minto Money*, https://mintomoney.com (last visited Aug. 4, 2026)).

[11] Docket 1 at 7, 11-12.

[12] Docket 1 at 11 (citation omitted).

[13] Docket 1 at 6, 14, 16.

[14] Docket 1-1 at 11, 23.

MPC, Next Level Servicing, and Defendant CreditServe, Inc., as long as BEDCO has any lending agreement that the Lochen Defendants arranged for BEDCO.[15]

On October 23, 2023, Plaintiff applied for and obtained a $600 loan from Minto Money through its website from her residence in Stevinson, California.[16] The loan carried an annual interest rate of 755.29%, resulting in $4,924.55 in finance charges and a total repayment amount of $5,524.55 for the $600 loan.[17] Plaintiff executed the Loan Agreement online by signing the document electronically.[18]

The Loan Agreement includes a Dispute Resolution Procedure Provision, which establishes a two-step dispute resolution process through Minto Money and the Tribal Lending Regulatory Authority.[19] The Loan Agreement also includes an Arbitration Provision, which provides that any unresolved dispute

> . . . shall be resolved by binding arbitration under the Consumer Arbitration Rules ("The Consumer Rules") of the American Arbitration Association ("AAA") . . . . All parties to such dispute will be governed by the rules and procedures of the American Arbitration Association applicable to consumer disputes, to the extent those rules and procedures do not contradict either the law of the Tribe, applicable

---

[15] Docket 1-1 at 12 ("During the Term of this Agreement, or any extension thereof, both Parties agree that as long as Company has any lending agreement or arrangement with any lender introduced to Company by Consultant or any affiliate thereof, including without limitation Mecca Capital, Inc., that the Parties shall maintain this exclusive relationship and Agreement and their exclusive cross-relationships and agreements with Next Level Servicing, Inc., and CreditServe, Inc., as they relate to any portfolio of Company benefiting from any lender Consultant introduces to Company, including without limitation Mecca Capital, Inc.").

[16] Docket 1 at 28; Docket 43-1 at 16.

[17] Docket 1 at 28; Docket 43-1 at 8-9.

[18] Docket 44 at 9-10 (citing Docket 43-1 at 8-9).

[19] Docket 44-1 at 12.

federal law, the Federal Arbitration Act (9 U.S.C. §§ 1-16), or the express terms of this Agreement or this Arbitration Provision, including the limitations on the arbitrator below. . . .

The arbitrator shall apply applicable substantive law consistent with the Governing Law set forth above, and the Federal Arbitration Act, 9 U.S.C. §§1-16 ("FAA") and applicable statutes of limitation and shall honor claims of privilege recognized at law.[20]

The Governing Law Clause provides as follows:

The laws of the Tribe and applicable federal law will govern this Agreement, without regard to the laws of any state or other jurisdiction, including the conflict of laws rules of any state. You agree to be bound by applicable Tribal and federal law, and in the event of a bona fide dispute between you and us, (as defined below), any arbitration conducted pursuant to the terms of this agreement shall be governed by tribal law, federal law and the Federal Arbitration Act (9 U.S.C. §§ 1-16).[21]

The Arbitration Provision also provides that the word "dispute" is "given its broadest possible meaning" and includes "all claims, disputes, or controversies arising from or relating directly or indirectly to this Dispute Resolution Procedure and Arbitration Provision, the validity and scope of this Provision and any claim or attempt to set aside this Arbitration Provision."[22] The parties refer to this provision as the "Delegation Clause."[23]

---

[20] Docket 44-1 at 12-13.

[21] Docket 44-1 at 11.

[22] Docket 44-1 at 12.

[23] Docket 53 at 22 ("The 'Delegation Clause' is the provision of the Loan Agreement which provides that all disputes—including those relating to 'the validity and scope of [the] Arbitration Agreement] and any claim or attempt to set aside this Arbitration [Agreement]'—'shall be resolved by binding arbitration.'") (second and third alterations in original).

Plaintiff alleges that she "paid $4,833.36 for this loan—more than eight times the $600 that she borrowed—before she ceased making payments once she learned that her loan from Minto Money is usurious."[24]  Then, on July 3, 2025, Plaintiff initiated this putative class action against the Lochen Defendants, the CreditServe Defendants, Tribal Defendants, and John Does 1-40.[25]

Plaintiff brings six damages claims against the Lochen Defendants, the CreditServe Defendants, and Mr. Thin Elk: (1) a RICO claim under 18 U.S.C. § 1962(c), (2) a RICO conspiracy claim under 18 U.S.C. § 1962(d), (3) a California usury claim; (4) an Unfair Competition Law claim under California Business and Professions Code § 17200, (5) unjust enrichment, alleged in the alternative, based on the collection of illegal, usurious interest; and (6) civil conspiracy.[26]  Plaintiff also brings claims for injunctive and declaratory relief against the BEDCO Defendants in their official capacities, seeking an injunction prohibiting BEDCO Defendants from making or collecting the loans in California and a declaration that her loans and the loans of California class members are void and unenforceable.[27]

---

[24] Docket 1 at 28.

[25] Docket 1.

[26] Docket 1 at 32-39.

[27] Docket 1 at 39-41.

Case No. 4:25-cv-00024-SLG, *James v. Lochen, et al.*
Order on Pending Motions
Page 7 of 26
Case 4:25-cv-00024-SLG     Document 88     Filed 08/07/26     Page 7 of 26

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that arbitration clauses in contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[28] Section 4 of the FAA allows a party "aggrieved by the alleged . . . refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement."[29]

In addition, § 3 of the FAA provides that if a court compels arbitration, the court "shall on application of one of the parties stay the trial of the action" until the arbitration has occurred.[30] However, "[i]f the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof."[31]

## DISCUSSION

Tribal Defendants and the CreditServe Defendants move to compel arbitration and dismiss or strike the class allegations.[32] Tribal Defendants

---

[28] 9 U.S.C. § 2.

[29] *Id.* § 4.

[30] 9 U.S.C. § 3; *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding.").

[31] 9 U.S.C. § 4.

[32] Docket 44; Docket 45; Docket 46; Docket 47.

separately move to dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(7).[33]  The Court begins by addressing Defendants' motions to compel arbitration.

## I. Motion to Compel Arbitration

Defendants' motions to compel arbitration present three primary issues: (1) whether the Delegation Clause is enforceable, (2) whether the Arbitration Provision is enforceable, and (3) which Defendants may compel arbitration.[34]  The Court begins with the threshold question of delegation.

## A. The Delegation Clause

Defendants assert that the Court should compel arbitration of this matter because the Delegation Clause delegates the threshold question of arbitrability to the arbitrator.[35]  Plaintiff contends that the Delegation Clause is unenforceable because, when coupled with the Governing Law Clause, it amounts to a prospective waiver of Plaintiff's state law defenses to arbitrability.[36]

When considering a motion to compel arbitration, a court ordinarily decides two gateway questions: "(1) whether the parties agreed to arbitrate; and (2)

---

[33] Docket 43.

[34] *See generally* Docket 44; Docket 46.

[35] Docket 44 at 15-16.

[36] Docket 53 at 6, 16-17, 22-23.

Case No. 4:25-cv-00024-SLG, *James v. Lochen, et al.*
Order on Pending Motions
Page 9 of 26

whether the agreement covers the dispute" at issue.[37]  But in *Rent-A-Center, W., Inc. v. Jackson*, the Supreme Court held that parties may agree to arbitrate even these gateway issues and delegate threshold questions of the validity, scope, and enforceability of an arbitration agreement to an arbitrator.[38]  A delegation provision is treated as an "additional, antecedent agreement" to arbitrate threshold disputes and is severable from the broader agreement to arbitrate the merits.[39]  The FAA therefore "operates on this additional arbitration agreement just as it does on any other."[40]

Accordingly, where an arbitration agreement contains a delegation provision, a court first determines whether the party opposing arbitration has specifically challenged that provision.[41]  If the delegation provision is specifically challenged, the court must resolve that challenge before compelling arbitration.[42] But if a party challenges only the arbitration agreement as a whole, the court must

---

[37] *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 84 (2002)).

[38] *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–70 (2010); *see also Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68–71 (2019).

[39] *See Rent-A-Center*, 561 U.S. at 70–71.

[40] *Henry Schein, Inc.*, 586 U.S. at 68–71 (quoting *Rent-A-Center*, 561 U.S. at 71); *see* 9 U.S.C. §§ 1–16.

[41] *See Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1009 (9th Cir. 2023) (citing *Rent-A-Center*, 561 U.S. at 71–74).

[42] *Id.*

Case No. 4:25-cv-00024-SLG, *James v. Lochen, et al.*
Order on Pending Motions
Page 10 of 26

Case 4:25-cv-00024-SLG    Document 88    Filed 08/07/26    Page 10 of 26

enforce the delegation provision and leave that broader challenge to the arbitrator.[43]

Here, Tribal Defendants assert that Plaintiff's challenge of the Delegation Clause is insufficient. "[T]o sufficiently challenge a delegation provision, the party resisting arbitration must specifically reference the delegation provision and make arguments challenging it[.]"[44] "[A] court need not . . . first evaluate the substance of the challenge," and "a party may use the same arguments to challenge both the delegation provision and arbitration agreement, so long as the party articulates why the argument invalidates each specific provision."[45]

Plaintiff asserts that "when coupled with the Governing Law Clause, this Delegation Clause itself becomes unenforceable," because an arbitrator will be "unable to properly assess whether the Arbitration Agreement was validly formed in the first place" if the arbitrator "cannot consider state law, including, for example, the doctrine of unconscionability."[46] Tribal Defendants assert that Plaintiff's challenge to the Delegation Clause is insufficient because Plaintiff is maintaining that the Delegation Clause becomes unenforceable only "'when coupled with the

---

[43] *Brennan*, 796 F.3d at 1133 ("But since Brennan failed to 'make any arguments specific to the delegation provision, and instead argued that the Arbitration Clause as a whole is unconscionable under state law, we need not consider that claim, because it is for the arbitrator to decide in light of the parties' clear and unmistakable delegation of that question[.]" (internal citations and quotation marks omitted)).

[44] *Bielski*, 87 F.4th at 1011.

[45] *Id.*

[46] Docket 53 at 22.

Case No. 4:25-cv-00024-SLG, *James v. Lochen, et al.*
Order on Pending Motions
Page 11 of 26
Case 4:25-cv-00024-SLG    Document 88    Filed 08/07/26    Page 11 of 26

Governing Law Clause.'"[47] Tribal Defendants argue that this is insufficient because any challenge to avoid arbitral determination of arbitrability must be "'specific to the delegation provision,'" and a delegation clause is severable from both the broader arbitration provision and the contract as a whole.[48] However, as the Ninth Circuit has made clear, "[i]f a party may refer to provisions outside the delegation provision, a court may, of course, consider those provisions in determining the validity of the delegation provision."[49] Plaintiff's reference to the Governing Law Clause, therefore, does not defeat her challenge to the Delegation Clause, and the Court finds that Plaintiff's Delegation Clause challenge is sufficient.

The Court turns next to whether the Delegation Clause is enforceable. Plaintiff's asserted defect is that the Delegation Clause, when coupled with the Governing Law Clause, amounts to a prospective waiver of "all state law defenses to arbitrability."[50] Therefore, the precise question before the Court at this stage is whether the Delegation Clause, considered in conjunction with the Governing Law Clause, prospectively waives Plaintiff's ability to raise state law defenses to arbitrability.

---

[47] Docket 68 at 7 (quoting Docket 53 at 22).

[48] Docket 68 at 8 (quoting *Brennan*, 796 F.3d at 1133).

[49] *Bielski*, 87 F.4th at 1012.

[50] Docket 53 at 23.

To answer that question, the Court turns to the prospective waiver doctrine. The Supreme Court first articulated the principle underlying the prospective waiver doctrine in *Mitsubishi Motors v. Soler Chrysler-Plymouth, Inc.*[51] In dicta, the Court recognized that when certain provisions of an arbitration agreement "operate[] in tandem as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations," the Court would have "little hesitation in condemning the agreement as against public policy."[52] The Supreme Court later described this principle as the "effective vindication" exception to the FAA, which permits courts to invalidate arbitration provisions that "operat[e] . . . as a prospective waiver of a party's *right to pursue* statutory remedies."[53]

Here, Plaintiff asserts that the Delegation Clause is "ineffective and unenforceable" because, when coupled with the Governing Law Clause's requirement that "[t]he laws of the Tribe and applicable federal law will govern this Loan Agreement, without regard to the laws of any state or other jurisdiction,"[54] it "prospectively waives all state law defenses to arbitrability."[55] However, in *Ferguson v. Corinthian Colleges, Inc.*, the Ninth Circuit held that "[t]he 'effective

---

[51] 473 U.S. 614 (1985).

[52] *Id.* at 637 n.19 (citations omitted).

[53] *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233, 235 (2013) (quoting *Mitsubishi Motors*, 473 U.S. at 637 n.19) (alteration in original)).

[54] Docket 44-1 at 11.

[55] Docket 53 at 23.

Case No. 4:25-cv-00024-SLG, *James v. Lochen, et al.*
Order on Pending Motions
Page 13 of 26
Case 4:25-cv-00024-SLG     Document 88     Filed 08/07/26     Page 13 of 26

vindication' exception, which permits the invalidation of an arbitration agreement when arbitration would prevent the 'effective vindication' of a federal statute, does not extend to state statutes."[56] The doctrine is instead "reserved for claims brought under federal statutes" because it rests on the principle that "other federal statutes stand on equal footing with the FAA."[57]

Plaintiff asserts that the Supreme Court extended the prospective waiver doctrine to state statutory rights in *Viking River Cruises, Inc. v. Moriana*.[58] However, as Tribal Defendants correctly note, "*Viking River* did not involve the prospective waiver doctrine."[59] The question in *Viking River* was whether the FAA preempted a California rule that treated Private Attorneys General Act ("PAGA") claims as indivisible and therefore prevented parties from agreeing to arbitrate an employee's individual PAGA claim separately from representative claims brought on behalf of other employees.[60] The Supreme Court held that the FAA preempted that California rule because it "unduly circumscribe[d] the freedom of parties to determine 'the issues subject to arbitration' and 'the rules by which they will

---

[56] 733 F.3d 928, 936 (9th Cir. 2013) (citing *Italian Colors Rest.,* 570 U.S. at 251–252 (Kagan, J., dissenting)).

[57] *Id.*

[58] Docket 53 at 18-19 (citing 596 U.S. 639, 653, n.5 (2022)).

[59] Docket 68 at 16-17.

[60] *Viking River*, 596 U.S. at 648–53.

Case No. 4:25-cv-00024-SLG, *James v. Lochen, et al.*
Order on Pending Motions
Page 14 of 26

arbitrate.'"[61]  In other words, *Viking River* held that California could not require parties to arbitrate PAGA claims in a manner inconsistent with their arbitration agreement.[62]  It did not hold that the prospective waiver doctrine extends to state statutory claims.

*Viking River* therefore does not disturb *Ferguson*'s holding that the prospective waiver doctrine does not extend to state statutes.  Accordingly, to the extent Plaintiff seeks to invalidate the Delegation Clause on the ground that it prospectively waives Plaintiff's state statutory rights, that relief is foreclosed by *Ferguson*.

However, as Tribal Defendants note, "[Section 2 of] the FAA preserves a party's ability to challenge an agreement on any 'grounds as exist at law or in equity for the revocation of any contract.'"[63]  Consistent with that language, the Supreme Court has explained that enforcement under the FAA depends on "background principles of state contract law," including doctrines governing the validity of agreements and the persons entitled to enforce them.[64]  Therefore, an arbitrator here may consider a generally applicable state contract law defense because the

---

[61] *Id.* at 659 (quoting *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 184 (2019)).

[62] *See Viking River*, 596 U.S. at 655–56.

[63] Docket 68 at 12 (quoting 9 U.S.C. § 2).

[64] *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630, 632 (2009); *see also GE Energy Power Conversion Fr. SAS, Corp. v. Outokumpu Stainless USA, LLC*, 590 U.S. 432, 437 (2020) (quoting *Arthur Andersen LLP*, 556 U.S. at 630); *Rent-A-Center*, 561 U.S. at 67–71.

Case No. 4:25-cv-00024-SLG, *James v. Lochen, et al.*
Order on Pending Motions
Page 15 of 26
Case 4:25-cv-00024-SLG    Document 88    Filed 08/07/26    Page 15 of 26

federal arbitration framework expressly selected by the parties in the Governing Law Clause may make that defense relevant. The Governing Law Clause may preclude state statutory provisions from governing the parties' substantive contractual rights, but it does not prohibit the arbitrator from considering generally applicable state contract law defenses as required by the FAA.

Plaintiff asserts that "when faced with similar circumstances and challenges to a delegation clause itself, numerous courts have determined that threshold questions of the enforceability of an arbitration agreement should not go to an arbitrator."[65] However, the tribal lending cases that Plaintiff cites are distinguishable. In those cases, the agreements required exclusive or effectively exclusive application of tribal law and thereby prevented the arbitrator from applying federal statutory law to the issue of arbitrability.[66] Those cases therefore involved agreements that made the arbitrator's consideration of federal law unavailable or illusory in determining the validity of the delegation clauses and arbitration agreements at issue.

---

[65] Docket 53 at 23 (first citing *Gibbs v. Haynes Invs., LLC*, 967 F.3d 332, 337-39 (4th Cir. 2020); and then citing *Gingras v. Think Fin., Inc.*, 922 F.3d 112, 126 (2d Cir. 2019).

[66] *See Gingras*, 922 F.3d at 125–28; *Gibbs v. Haynes Invs., LLC*, 967 F.3d at 342–45; *see also Williams v. Medley Opp'y Fund II, LP*, 965 F.3d 229, 239–44 (3d Cir. 2020). Plaintiff also relies on *Harris v. W6LS, Inc.*, 177 F.4th 777 (7th Cir. 2026), but *Harris* is distinguishable. Docket 85. In *Harris*, the Seventh Circuit concluded that the delegation provision failed because the agreement required application of a nonexistent body of tribal contract law, leaving no governing law by which the arbitrator could determine contract formation. *Harris*, 177 F.4th at 784-87. Here, the Loan Agreement expressly provides that the Arbitration Provision is governed by the FAA, and as discussed above, the FAA preserves generally applicable state contract law defenses.

Case No. 4:25-cv-00024-SLG, *James v. Lochen, et al.*
Order on Pending Motions
Page 16 of 26
Case 4:25-cv-00024-SLG    Document 88    Filed 08/07/26    Page 16 of 26

The Loan Agreement here contains no comparable restriction. It does not provide that only tribal law applies or that tribal law supersedes conflicting federal law. Instead, the Loan Agreement expressly provides that the "Arbitration Provision . . . shall be governed by the FAA."[67] The arbitrator therefore has the authority to consider Plaintiff's generally applicable state law contract defenses pursuant to the Arbitration Provision under the FAA.[68]

Based on the foregoing, the Court concludes that the Delegation Clause is enforceable. The arbitrator, rather than the Court, must determine whether the Arbitration Provision as a whole is valid and enforceable. Because the parties delegated questions concerning the scope and validity of the Arbitration Provision to the arbitrator, the Court does not reach Defendants' request that it compel Plaintiff to arbitrate on an individual basis.[69]

### B. Defendants Entitled to Compel Arbitration

Tribal Defendants and the CreditServe Defendants assert that they are entitled to compel arbitration because they are "related third parties" who are bound by and benefit from the Arbitration Provision under the Loan Agreement.[70]

---

[67] Docket 44-1 at 13.

[68] The Court notes that the Ninth Circuit considered a similar issue in *Brice v. Haynes Invs., LLC*, 13 F.4th 823 (9th Cir. 2021), *vacated on reh'g en banc*, 50 F.4th 1042 (9th Cir. 2022). Because the panel opinion was vacated, however, *Brice* is not binding precedent, and the Court does not rely on it in reaching its determination.

[69] Docket 44 at 31-32; Docket 46 at 27.

[70] Docket 44 at 20-22; Docket 46 at 16-19.

Plaintiff does not dispute that the BEDCO Defendants are related third parties entitled to compel arbitration if the Delegation Clause is enforceable.[71]  However, Plaintiff asserts that Mr. Thin Elk and the CreditServe Defendants are not related third parties nor can they invoke equitable estoppel to compel arbitration.[72]  The Court first addresses equitable estoppel.

A nonsignatory "may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement."[73]  Under California law, a signatory plaintiff is equitably estopped from avoiding arbitration with a nonsignatory in two circumstances: "(1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are intimately founded in and intertwined with the underlying contract, and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement."[74]

---

[71] Docket 53 at 10 ("Plaintiff concedes that given their role as 'directors' of BEDCO, the [BEDCO] Defendants would be entitled to invoke the Arbitration Agreement, if it were enforceable (it is not).").

[72] Docket 53 at 9-13; Docket 55 at 11-14.

[73] *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013) (citing *Arthur Andersen LLP*, 556 U.S. at 632).

[74] *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1229 (9th Cir. 2013) (quoting *Kramer*, 705 F.3d at 1128).

Case No. 4:25-cv-00024-SLG, *James v. Lochen, et al.*
Order on Pending Motions
Page 18 of 26
Case 4:25-cv-00024-SLG     Document 88     Filed 08/07/26     Page 18 of 26

The Court first considers whether Plaintiff's claims are "inextricably intertwined" with the terms of the Loan Agreement.[75]  Mr. Thin Elk and the CreditServe Defendants assert that "Plaintiff's claims all depend on her decision to enter into the Loan Agreement, and without entering into that agreement, there would be no alleged causes of action."[76]  Plaintiff responds that "'[a] mere but for test does not supply the intimately . . . intertwined relationship upon which equitable estoppel is dependent.'"[77]

A claim is "intimately founded in and intertwined with the underlying contract" when the plaintiff's theory of liability is "dependent upon, or inextricably bound up with, the obligations imposed by the contract" containing the arbitration provision.[78] The purpose of this doctrine is to prevent a signatory from "using the terms or obligations of an agreement as the basis for [her] claims against a nonsignatory, while at the same time refusing to arbitrate with the nonsignatory under another clause of that same agreement."[79]  But a signatory is not equitably estopped merely because the complaint "[makes] reference to" the agreement or because

---

[75] Docket 44 at 24; Docket 68 at 23.

[76] Docket 68 at 23-24; Docket 46 at 20-21.

[77] Docket 53 at 12 (internal quotations omitted) (quoting *In re Toyota Motor Corp. Unintended Acc. Mktg., Sales Prac. & Prods. Liab. Litig.*, 838 F. Supp. 2d 967, 993 (C.D. Cal. 2012)).

[78] *Kramer*, 705 F.3d at 1129 (quoting *Goldman v. KPMG LLP*, 173 Cal. App. 4th 209, 221, 229-30 (Cal. 2009)).

[79] *Id.* (quoting *Jones v. Jacobson*, 195 Cal. App. 4th 1, 20 (2011)).

Case No. 4:25-cv-00024-SLG, *James v. Lochen, et al.*
Order on Pending Motions
Page 19 of 26
Case 4:25-cv-00024-SLG     Document 88     Filed 08/07/26     Page 19 of 26

the claim would not have arisen "but for" the contractual relationship.[80]  Instead, the claim must "rely on the terms of the written agreement" or "intimately rely on the existence" of the agreement itself.[81]  Put another way, estoppel applies when the claims at issue are not "fully viable without reference to the terms of" the agreement.[82]

In *Kramer*, owners and lessees of Toyota vehicles brought a class action suit against Toyota alleging that their vehicles had defective anti-lock braking systems.[83]  The plaintiffs had leased or purchased their cars from Toyota dealerships and signed purchase agreements containing arbitration clauses.[84] Toyota was not a party to those agreements but moved to compel arbitration pursuant to those agreements.[85]  The Ninth Circuit affirmed the district court's rejection of equitable estoppel because the plaintiffs were "not seek[ing] to enforce or challenge the terms, duties, or obligations of the Purchase Agreements" and their claims, therefore, did not "intimately rely on the existence" of those agreements.[86]  Likewise, in *In re Henson*, equitable estoppel was rejected because

---

[80] *Id.*; *see also In re Henson*, 869 F.3d 1052, 1060–61 (9th Cir. 2017).

[81] *Kramer*, 705 F.3d at 1128, 1132.

[82] *Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867, 875–76 (9th Cir. 2021) (quoting *Goldman*, 173 Cal. App. 4th at 230).

[83] 705 F.3d at 1124.

[84] *Id.*

[85] *Id.* at 1124–25.

[86] *Id.* at 1131–32.

Case No. 4:25-cv-00024-SLG, *James v. Lochen, et al.*
Order on Pending Motions
Page 20 of 26
Case 4:25-cv-00024-SLG    Document 88    Filed 08/07/26    Page 20 of 26

the plaintiff's statutory claims were "not based on the Customer Agreement" and were "replete with allegations of wrongdoing . . . that ha[d] nothing to do with the Customer Agreement."[87]   And in *Goldman*, equitable estoppel was rejected because the plaintiffs did not seek "to enforce or otherwise take advantage of any portion" of the agreements containing the arbitration provisions; the claims were not "even tangentially related to any duty, obligation, term or condition imposed by the . . . agreements" at issue and "the claims [were] fully viable without reference to the terms of those agreements."[88]

By contrast, the Ninth Circuit upheld the application of equitable estoppel in *Franklin* because the plaintiff's statutory wage claims could not be resolved "without reference to the Assignment Contract" and were not "fully viable without reference to the terms of" that agreement.[89]   The Ninth Circuit explained that the plaintiff's claims "depend on whether she was paid the wages or overtime she was due," which were governed by the Assignment Contract, and therefore the claims were "'intertwined with' [that] contract."[90]   Equitable estoppel was also applied to require a terminated employee to arbitrate his claim in *Boucher v. Alliance Title Co., Inc.,* where the terminated employee sought to hold a nonsignatory company

---

[87] 869 F.3d at 1061.

[88] 173 Cal. App. 4th at 229.

[89] 998 F.3d at 875–76 (quoting *Goldman*, 173 Cal. App. 4th at 230).

[90] *Id.* at 870, 876.

Case No. 4:25-cv-00024-SLG, *James v. Lochen, et al.*
Order on Pending Motions
Page 21 of 26
Case 4:25-cv-00024-SLG     Document 88     Filed 08/07/26     Page 21 of 26

to which his former employer had transferred its operations liable for refusing to honor the employment agreement containing the arbitration provision.[91]

In the tribal lending context, the district court in *Huntley v. Rosebud Economic Development Corp.* found that equitable estoppel applied to require arbitration of the plaintiffs' RICO and California-law claims against the company that "provides the employees and systems that are utilized to underwrite and approve the loans made by" the lender because the claims were based on the allegedly usurious loan agreements.[92]  The court reasoned that "without the Agreements, there is no harm to Plaintiffs and no scheme to challenge," and that "the terms of the Agreements are the crux of [Plaintiffs'] claims."[93]  Similarly, in *Elder v. BMO Harris Bank, N.A.*, the court compelled arbitration because the plaintiff necessarily relied on "the terms of the written agreement in which the arbitration clause is contained," as "that agreement . . . contain[ed] the allegedly usurious interest provision upon which th[e] law suit [wa]s based."[94]

Here, Plaintiff's RICO claims against Mr. Thin Elk and the CreditServe Defendants are inextricably intertwined with the Loan Agreement for the same reason equitable estoppel applied in *Franklin*, *Huntley*, and *Elder*—the claims are

---

[91] 127 Cal. App. 4th 262, 265-66, 272-73 (Cal. 2005).

[92] Case No. 22-cv-1172, 2023 WL 5186247, at *3–5 (S.D. Cal. Aug. 11, 2023).

[93] *Id.* at *4.

[94] Case No. 13-cv-3043, 2014 WL 1429334, at *1 (D. Md. Apr. 11, 2014).

not viable without reference to the Loan Agreement's substantive terms. As Plaintiff acknowledges, Plaintiff's RICO claims are premised on the collection of an unlawful debt,[95] and RICO defines "unlawful debt" to include a debt that is unenforceable under state or federal usury law and that was incurred in connection with the business of lending money at a rate at least twice the enforceable rate.[96] Determining whether Plaintiff incurred an unlawful debt therefore requires examination of the Loan Agreement's financial terms, including the principal amount, interest rate, finance charges, repayment schedule, and total repayment obligation. Unlike in *Kramer*, *In re Henson*, and *Goldman*, the Loan Agreement does not merely supply background facts or provide context for an independent statutory wrong. Rather, it creates the debt Plaintiff alleges is unlawful.

The same is true of Plaintiff's state law claims against Mr. Thin Elk and the CreditServe Defendants. The California usury claim alleges that Plaintiff's loan carried an interest rate above California's 10% cap.[97] The Unfair Competition Law claim alleges that Defendants attempted to evade California usury law, represented or implied that state law did not apply, and charged and collected excessive interest.[98] The unjust enrichment claim alleges that Defendants were

---

[95] *See* Docket 53 at 17-18.

[96] 18 U.S.C. § 1961(6).

[97] Docket 1 at 35.

[98] Docket 1 at 36-37.

Case No. 4:25-cv-00024-SLG, *James v. Lochen, et al.*
Order on Pending Motions
Page 23 of 26
Case 4:25-cv-00024-SLG    Document 88    Filed 08/07/26    Page 23 of 26

enriched by charging and collecting illegal, usurious interest.[99]   And the civil conspiracy claim alleges that Defendants conspired to violate state usury and lending laws and seeks recovery of amounts repaid on the loans.[100]  As in *Huntley* and *Elder*, these claims depend on the allegedly usurious terms of the Loan Agreement itself.  And as in *Franklin* and *Boucher*, Plaintiff seeks to impose liability based on benefits, payments, or obligations created by that underlying agreement. Each claim against Mr. Thin Elk and the CreditServe Defendants therefore turns on both the existence and terms of the Loan Agreement.

Based on the foregoing, the Court finds that Plaintiff's claims against Mr. Thin Elk and the CreditServe Defendants are intimately founded in and intertwined with the Loan Agreement.  Therefore, Plaintiff is equitably estopped from denying Mr. Thin Elk and the CreditServe Defendants the benefit of the Arbitration Provision.  Having found equitable estoppel warranted on that basis, the Court does not reach the other asserted bases asserted by these Defendants for compelling arbitration.

### C. Stay

When a court orders arbitration to proceed, § 3 of the FAA requires the court to "stay the trial of the action until such arbitration has been had in accordance with

---

[99] Docket 1 at 37-38.

[100] Docket 1 at 38.

the terms of the agreement."[101]  Therefore, in light of the Court's finding that the Delegation Clause is enforceable and in the interest of judicial economy, the Court **STAYS** this action as to all Defendants pending completion of the arbitration proceedings.[102]  Further, in light of the stay pending arbitration, the Court does not reach the merits of the pending Motion to Dismiss or Motions to Dismiss or Strike Class Allegations.  Accordingly, those motions are **DENIED** without prejudice.

**CONCLUSION**

Based on the foregoing, IT IS ORDERED as follows:

- Tribal Defendants' Motion to Compel Arbitration at Docket 44 and CreditServe Defendants' Motion to Compel Arbitration at Docket 46 are each **GRANTED**;

- Tribal Defendants' Motion to Dismiss at Docket 43, Tribal Defendants' Motion to Dismiss or Strike Class Allegations at Docket 45 and CreditServe

---

[101] 9 U.S.C. § 3; *Spizzirri*, 601 U.S. at 478 ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding.").

[102] *See Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863–64 (9th Cir. 1979) ("A trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case. This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court. In such cases the court may order a stay of the action pursuant to its power to control its docket and calendar and to provide for a just determination of the cases pending before it." (internal citations omitted)); *Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir. 1983).

Case No. 4:25-cv-00024-SLG, *James v. Lochen, et al.*
Order on Pending Motions
Page 25 of 26
Case 4:25-cv-00024-SLG   Document 88   Filed 08/07/26   Page 25 of 26

Defendants' Motion to Dismiss or Strike Class Allegations at Docket 47 are each **DENIED** without prejudice;

• This action is **STAYED** pending completion of the arbitration proceedings; and

• The parties shall file a joint status report **within fourteen (14) days** of the completion of the arbitration proceedings, or **every six (6) months** from the date of this order, whichever occurs first.

DATED this 7th day of August, 2026, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE